# UNITED STATES DISTRICT COURT
## FOR THE SOTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel*. DEIDRE GENTRY, | § § § | |
| Plaintiff/Relator, | § § | |
| v. | § § | Civil Action No. 4:23-cv-01291 |
| ENCOMPASS HEALTH REHABILITATION HOSPITAL OF PEARLAND, LLC, | § § § | |
| Defendant. | § § § | |

---

## DEFENDANT ENCOMPASS HEALTH REHABILITATION HOSPITAL OF PEARLAND, LLC'S MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................ 1

II.     RELATOR'S ALLEGATIONS ................................................................................... 2

III.    GOVERNING LAW ................................................................................................... 4

   A.   Elements of an FCA Claim ..................................................................................... 4

   B.   Rule 12(b)(6) Dismissal Standards.......................................................................... 4

      1.   Rule 8(a): Stating a Plausible Claim for Relief under the FCA .......................... 4

      2.   Rule 9(b): Pleading Fraud with Particularity.................................................... 6

IV.     ARGUMENT ............................................................................................................. 8

   A.   Relator Pleads Neither Plausible Nor Particular Claims ......................................... 8

      1.   The SAC Lacks Facial Plausibility Required by Rule 8(a) ............................... 11

      2.   The SAC Lacks the Particularity Required by Rule 9(b) .................................. 14

   B.   Relator Fails to Allege Materiality ........................................................................ 18

   C.   Dismissal Should Be with Prejudice ..................................................................... 18

V.      CONCLUSION......................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................*passim*

*United States ex rel. Atkins v. McInteer*,
  470 F.3d 1350 (11th Cir. 2006) .................................................................... 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................... 4, 5, 6, 13

*Cavlovic v. J.C. Penney Corp.*,
  No. 2:17-CV-2042, 2018 U.S. Dist. LEXIS 95565 (D. Kan. June 7,
  2018) .......................................................................................................... 13

*United States ex rel. Clausen v. Lab. Corp. of Am.*,
  290 F.3d 1301 (11th Cir. 2002) .................................................................... 8

*Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*,
  972 F.3d 684 (5th Cir. 2020) ........................................................................ 6

*United States ex rel. Dresser v. Qualium Corp.*,
  No. 5:12-CV-01745, 2016 U.S. Dist. LEXIS 93248 (N.D. Cal. July 18,
  2016) .......................................................................................................... 17

*United States ex rel. Grant v. United Airlines Inc.*,
  912 F.3d 190 (4th Cir. 2018) ........................................................................ 7

*United States ex rel. Greenfield v. Medco Health Sols., Inc.*,
  880 F.3d 89 (3d Cir. 2018) .......................................................................... 18

*United States ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) .......................................................... 7, 8, 14, 15

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) ................................................................... 7, 18

*Heinze v. Tesco Corp.*,
  971 F.3d 475 (5th Cir. 2020) ........................................................................ 3

*United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*,
    816 F. App'x 892 (5th Cir. 2020) ............................................... 5, 13, 17, 18

*Kitchell v. Aspen Expl., Inc.*,
    562 F. Supp. 2d 843 (E.D. Tex. 2007) ............................................... 2

*United States ex rel. Longhi v. Lithium Power Techs., Inc.*,
    575 F.3d 458 (5th Cir. 2009) ............................................... 4

*United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
    707 F.3d 451 (4th Cir. 2013) ............................................... 5

*Nicholson v. MedCom Carolinas, Inc.*,
    42 F.4th 185 (4th Cir. 2022) ............................................... 18

*United States ex rel. Nunnally v. West Calcasieu Cameron Hosp.*,
    519 F. App'x 890 (5th Cir. 2013) ............................................... 14, 17

*United States ex rel. Porter v. Magnolia Health Plan, Inc.*,
    810 F. App'x 237 (5th Cir. Apr. 15, 2020) ............................................... 18

*United States ex rel. Rostholder v. Omnicare, Inc.*,
    No. 1:07-CV-1283, 2012 U.S. Dist. LEXIS 114278 (D. Md. Aug. 14, 2012), *aff'd*, 745 F.3d 694 (4th Cir. 2014) ............................................... 14

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
    742 F.2d 786 (3d Cir. 1984) ............................................... 7

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) ............................................... 6, 15

*United States v. McNinch*,
    356 U.S. 595 (1958) ............................................... 18

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
    579 U.S. 176 (2016) ............................................... 6

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ............................................... 8

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) ............................................... 7

**Statutes**

31 U.S.C. § 3729(b)(4) ................................................................................ 18

**Rules**

Fed. R. Civ. P. 8(a) ............................................................................ *passim*

Fed. R. Civ. P. 9(b) ........................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 4

**Regulations**

42 C.F.R. § 412.624(f) ............................................................................ 15

**Other Authorities**

66 Fed. Reg. 41315 (Aug. 7, 2001) ............................................................. 8

83 Fed. Reg. 20972 (May 8, 2018)............................................................... 8

CMS, IRF Coverage Requirements Conference Call Transcript,
  p. 8 (Nov. 12, 2009), http://tinyurl.com/3j78vu3r ..................................... 12

Medicare Benefit Policy Manual, Ch. 1, § 110.2,
  https://tinyurl.com/yrw5vu8b.................................................................. 13

Defendant Encompass Health Rehabilitation Hospital of Pearland, LLC ("Encompass") moves to dismiss this False Claims Act ("FCA") *qui tam* action under Federal Rules of Civil Procedure 12(b)(6), 8(a), and 9(b) for failure to state a plausible and particular fraud claim, and for failure to sufficiently allege scienter and materiality. DOJ investigated Deidre Gentry's ("Relator") allegations and rightly declined to intervene within five months. ECF 7. Encompass asks this Court to dismiss the Second Amended (ECF 28, "SAC")[1] in its entirety with prejudice.

## I.    INTRODUCTION

On Relator's third pass at drafting a complaint that pleads sufficient facts to support her FCA action, she still falls short. This time, Relator uses a framing device to attempt to fill the factual gaps in her pleadings: describe an unremarkable interaction with a supervisor relating to Relator's information-gathering job responsibilities, name a non-existent Medicare requirement or prohibition that is purportedly relevant to the interaction, re-visit the description to insert inflammatory adjectives and adverbs, and allege that the purpose of the interaction was to circumvent a non-existent Medicare requirement. Pleadings like this do not satisfy the federal pleading standards. As such, the SAC's claims for FCA relief based on Relator's accusations of Medicare fraud are defective for the same reasons Encompass noted in connection with her prior pleading, but with more words this time. *See* ECF 19. She still fails to plead either false claims or a fraudulent scheme . Setting aside her conclusory declarations (as required), the well-pleaded facts describe benign, lawful

---

[1] Relator calls this pleading her "Amended Complaint," even though, "in reality," it is her "*second* amended complaint." ECF 23 at 1.

conduct. As such, the SAC's implicit request to this Court is to fill the negative space with inference: the fraudulent scheme must exist because she says it does. The Rules prohibit such an inference, and her naked averment need not be accepted as true. Rules 8(a) and 9(b) compel dismissal.

Simply put, Relator misinterprets the underlying regulations and  misunderstands the import of the facts she does plead; she simply lacks knowledge regarding actual fraudulent conduct. The third draft of the complaint demonstrates clearly that this deficiency cannot be cured; dismissal should be with prejudice.

## II.    RELATOR'S ALLEGATIONS

For purposes of a motion to dismiss, the Court must only accept "well-pleaded facts" as true, and must reject the "conclusory statements" and any "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This requires distinguishing the well-pleaded facts from legal conclusions and other inadequate averments of fraud to determine the factual bases of each claim. *Iqbal*, 556 U.S. at 679 (2009); *Kitchell v. Aspen Expl., Inc.*, 562 F. Supp. 2d 843, 853 (E.D. Tex. 2007). Relator's arguably well-pleaded facts are:

- Relator "is a United States citizen and resident of the State of Texas," SAC ¶ 5;
- Relator worked for Encompass for less than five months, *id.* ¶¶ 5, 16-17, 31;
- Relator possesses no "clinical background," *id.* ¶ 18;
- "Medicare allow[s] nonclinical personnel to collect" preadmission screening "data" necessary for processing patient admissions to Inpatient Rehabilitation Facilities ("IRFs), *id.* ¶ 20;
- Encompass and its "Business Development Director," "Novia Mearidy," trained nonclinical personnel to compile information for "certifying physicians" to review when determining whether to admit patients, *id.* ¶¶ 19-23; and

- Patients were admitted to Encompass as part of this process, which concerned Relator and her "counterparts," *id.* ¶¶ 27-30.

Instead, Relator's allegations rely on the following "conclusory allegations, unwarranted factual inferences, or legal conclusions," *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020), and are "not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 680:

- Relator brought this action "on behalf of" Encompass, SAC ¶ 1;
- Relator witnessed instances of "fraudulent practices adopted by" Encompass, *id.* ¶ 5;
- Encompass "is owned by Encompass Health Corporation, the leading provider of inpatient rehabilitation services and has decades of experience in the field," *id.* ¶15;
- Encompass hired Relator "to solicit rehab referrals for admission to various hospitals," *id.* ¶ 16;
- Nonclinical personnel "performed prescreens/clinical narratives" and "clinical screens," *id.* ¶¶ 20-21;
- Nonclinical personnel used "magic language" to "cause admissions" that were "bogus," *id.* ¶¶ 25-26; and
- Encompass "was causing fraudulent admissions/government reimbursements" and "the submission of false claims," *id.* ¶¶ 30-31;

Relator's apparently limited observations of nonclinical, facilitating admissions support are benign and entirely consistent with compliant IRF operations. These reasonable explanations dwarf the fraud inferences Relator impermissibly attempts to draw from the well-pleaded facts, which in any event fail to describe any fraudulent scheme to circumvent IRF regulations, tie any of Encompass's alleged fraudulent practices to clear regulatory standards, or otherwise say anything about Encompass's admission or billing practices giving rise to the submission of "false" claims. Relator's allegations are conclusory on their face, based on supposition and innuendo, and belie the SAC's failure to meet the federal pleading standards of Rules 8(a) and 9(b), as discussed further below.

## III.   GOVERNING LAW

### A.   Elements of an FCA Claim

To state an actionable claim under the FCA, a relator must sufficiently plead four elements: "(1) '[that] there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim).'" *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)).

### B.   Rule 12(b)(6) Dismissal Standards

#### 1.   Rule 8(a): Stating a Plausible Claim for Relief under the FCA

To survive a motion to dismiss under Rules 8(a) and 12(b)(6), Relator's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Testing a complaint's "facial plausibility," *Iqbal*, 556 U.S. at 663, first requires separating any "well-pleaded facts" from "conclusory statements" and any "legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "[L]abels and conclusions," "formulaic recitation of the elements of a cause of action," "naked assertions," and "bald allegations" must be stripped from the pleading and disregarded, even when they "are consistent with [defendants'] purposefully" unlawful behavior or "wrongful intent." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557), 681-83. Only after having disregarded the

conclusory statements, a court must then decide whether the well-pleaded factual allegations, if any, are sufficient to pass Rule 8(a)'s plausibility test.

FCA allegations are not plausible, and fail under Rule 8(a), when alternative legally appropriate explanations are "obvious" or likely to exist, as it is unreasonable to infer unlawful behavior in those circumstances. *Twombly*, 550 U.S. at 567. "Facts that are 'merely consistent with' liability do not establish a plausible claim to relief." *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678); *United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 897, 901 n.30 (5th Cir. 2020) (same). The plausibility standard specifically "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556*). So even if no "legally appropriate explanations" exist, Relator's allegations can still only be "plausible" if the well-pleaded facts "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated simply, in the absence of well-pleaded facts showing the conduct was indeed fraudulent, it is inappropriate to presume fraud.

To be clear, courts need not decide whether the "obvious alternative explanation" of the well-pleaded facts is the actual explanation at this stage, as deciding which alternative explanation is ***true*** would be a question for summary judgment based on the weight of the evidence. The precursor question posed by this Motion, as mandated under Rule 8(a), is simply: Are the well-pleaded facts consistent with benign, non-fraudulent conduct? If "yes," the FCA allegations are not legally ***plausible*** and the SAC ought to be dismissed—regardless of whether the well-pleaded facts are also consistent with fraud (*i.e.,*

fraud could be a ***possible*** explanation for the challenged conduct, but the facts do not foreclose benign, non-fraudulent conduct). If "no" (the well-pleaded facts are ***not*** consistent with a legal alternative), the claim may plausibly assert fraud, but only if the well-pleaded facts "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### 2.      Rule 9(b): Pleading Fraud with Particularity

Since FCA actions are rooted in fraud, Rule 9(b) amplifies the pleading standard above mere notice and beyond Rule 8(a)'s plausibility requirements articulated by the Supreme Court in *Twombly* and *Iqbal*. To comply with Rule 9(b)'s heightened pleading standard, the fraud giving rise to FCA liability must be stated "with ***particularity***." FED. R. CIV. P. 9(b); *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195 n.6 (2016); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). Relator must specifically plead the factual "who, what, when, where, and how" of the alleged fraud (*i.e.*, particular, operative facts of the alleged fraud). *Thompson*, 125 F.3d at 903. Without these particularized factual allegations, defendants and courts must "make guesses to fill in the blanks." *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 694 (5th Cir. 2020). Crucially, "Rule 9(b) does not allow the plaintiffs to force the defendants—or the court—to make such assumptions." *Id.* (quoting *Dorsey v. Portfolio Equitis, Inc.*, 540 F.3d 333, 340 (5th Cir. 2008) (citing *Integra*, 816 F. App'x at 899)). Thus, the Fifth Circuit interprets Rule 9(b) to require an FCA complaint to include "both an alleged scheme to submit false claims and details leading to a strong inference that those claims were submitted" where (as here)

the relator "cannot allege the details of an actually submitted false claim." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190-91 (5th Cir. 2009).

Like Rule 8(a), Rule 9(b) is a gatekeeping requirement designed to weed out meritless fraud claims at an early stage. *Id*. at 185. The *Grubbs* standard therefore "comports with Rule 9(b)'s objectives of ensuring the complaint 'provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs." *Id*. at 190 (quoting *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994)); *see also Wilson*, 525 F.3d at 380 (Rule 9(b) prohibits claims that "would have to rest primarily on facts learned through the costly process of discovery"); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (explaining Rule 9(b)'s defensive purposes). Put simply, Rule 9(b) "safeguard[s] defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

Rule 9(b)'s protective measures apply with "special force" in the FCA context. *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018). Whistleblowers have "strong financial incentives to bring an FCA claim," so Rule 9(b) operates as an "especially important" check on those incentives by "[r]equiring relators to plead FCA claims with particularity." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006). Indeed, the FCA's significant financial rewards to relators incentivize the filing of "baseless claims as a pretext to 'fishing expedition[s],'" and Rule 9(b) eliminates such strike suits. *Grubbs,* 565 F.3d at 190-91; *United States ex rel. Clausen*

*v. Lab. Corp. of Am.*, 290 F.3d 1301, 1314 n. 24 (11th Cir. 2002) ("When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery" by lobbing "baseless allegations used to extract settlements."). Fifth Circuit courts "apply [Rule 9(b)'s specificity requirement] with force, without apology." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

## IV.    ARGUMENT

The SAC must be dismissed in its entirety, with prejudice, for three independent reasons: (1) it lacks facial plausibility; (2) an absence of particularity of either false claims or fraudulent behavior; and (3) there is no allegation of materiality.

### A.    Relator Pleads Neither Plausible Nor Particular Claims

By way of background, Medicare specifically designed its IRF benefit to address a unique need in the continuum of care: medium-term rehabilitation of sub-acute patients. *See* 66 Fed. Reg. 41315, 41358 (Aug. 7, 2001); 83 Fed. Reg. 20972, 20998 (May 8, 2018). Because IRF patients are not acute-care patients, IRFs are not acute-care hospitals. And because these medically complex patients have variable and evolving needs following their discharge from an acute care setting, the Centers for Medicare & Medicaid Services ("CMS") issues comprehensive guidance to help the administrative, multidisciplinary care teams at IRFs apply Medicare's rules to how they admit and rehabilitate their patients and bill for their services. Medicare's IRF reimbursement scheme aims to predict patients' resource utilization, whose shifting medical complexity generates a multitude of claim-variations with varying reimbursement implications.

Into this complicated regulatory environment steps Relator, who claims no exposure to the claims filing process, nor myriad other functions involved in determining appropriate Medicare reimbursement for IRF services. Instead, she flatly concludes Encompass "was causing fraudulent admissions/government reimbursements" for three patients because "sales representatives" authored "narrative[s]" that somehow rendered the admissions "inappropriate." SAC ¶¶ 27-30. CMS, however, recognizes that logistical necessities require the involvement of nonclinical personnel in facilitating IRF admissions processes, so the agency's guidance explicitly permits the conduct Relator casts as improper. *See infra* Section IV.A.1.a.

Further, and consistent with her self-identified role as a "sales representative," Relator pleads no facts regarding the submission of Medicare claims for any of the three patients referenced in the SAC, much less how she would know one way or the other whether Medicare was ultimately billed or for what services. She pleads no basis for concluding that any of these patients were not medically appropriate for admission,[2] and acknowledges she lacks the clinical expertise to even make such a determination. Rather, Relator concedes her role was essentially to "collect data" for "***pre***screen[ing]" patients, which was ultimately reviewed by "rehabilitation physicians [to] certify/adopt." *Id.* at ¶¶ 20-21 (emphasis added). In other words, Relator offers no more than her personal disagreement with nonclinical personnel's involvement in IRF admissions generally.

---

[2] For one patient, she precludes any possibility of FCA liability because she does not even plead the patient was admitted to Encompass. SAC ¶ 29.

Instead of pleading any reason for her disagreement, Relator concludes patients were, in her non-medical opinion, being admitted ***by "physicians"*** without "medical clinical justifications" she presumes are required for IRF services. SAC ¶ 23. The SAC does not identify what such "justifications" should consist of, nor explain their implications, if any, on IRF patient admissions. Again, Medicare explicitly endorses the SAC's only well-pleaded facts regarding IRF admission processes. The SAC is utterly silent as to what physicians did (or did not) consider when making admission decisions, how patients were evaluated for discharge from the acute care setting and admission to the IRF, or the extent to which nonclinical (or clinical) personnel were (or were not) involved in the various components of that process. Relator may have an opinion about nonclinical personnel's role in the admissions process, but apart from permissible information gathering activities, the SAC fails to identify conduct that would be considered even legally questionable, much less fraudulent and resulting false claims.

Stripped of its impermissible conclusory opinions, the SAC's well-pleaded facts describe IRF practices "not only compatible with," but "more likely explained by" lawful behavior. *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570). Consequently, Relator fails to offer a plausible FCA violation under Rule 8(a). The SAC fares no better under Rule 9(b), asking the Court to infer the absent facts that would supposedly support Relator's conclusory allegations. Specific, operative facts of the alleged fraud scheme in action are nowhere to be found; nor are any facts creating a reasonable inference that materially false claims were submitted as part of that scheme.

Rules 8(a) and 9(b) require more—they require Relator to set forth the particular factual bases for her beliefs. If mere speculation could satisfy federal pleading standards, ***there would be no federal pleading standards***. FCA jurisprudence in this Circuit prohibits inferring fraud from conclusory characterizations of benign facts. Regardless of the inflammatory nature of Relator's accusations, the Court may not infer the core facts Relator fails to allege. Rules 8(a) and 9(b) compel dismissal of such thin pleadings.

### 1.     The SAC Lacks Facial Plausibility Required by Rule 8(a)

No facts actually support Relator's claims, so her pleading resorts to conclusory statements, presupposing the fraud she alleges. She pleads neither codes, nor bills, nor claims. Properly contextualized below, the SAC describes a lawful practice endorsed by CMS. *See Iqbal*, 556 U.S. at 679 (testing plausibility is a "context-specific task"). Relator's claims therefore fail to "plausibly suggest an entitlement to relief." *Id.* at 681.

### a)     The SAC Is Consistent with Legal and Obvious Alternatives to Fraud

Relator's well-pleaded facts describe behavior consistent with appropriate IRF admissions. Medicare understands and anticipates that nonclinical personnel will be involved in various aspects of the IRF admissions process, including compiling information for admissions. With respect to the use of "non-clinical personnel in the preadmission screening process," CMS explicitly instructs IRFs:

> Although clinical personnel are required to evaluate the preadmission screening information, each IRF may determine its own processes for collecting and compiling the preadmission screening information. The focus of the review of the preadmission screening information will be on its completeness, accuracy, and the extent to which it supports the

appropriateness of the IRF admission decision, not on how the process is organized.

CMS, Follow-Up Information Regarding the IRF Coverage Provisions in the 2010 Final Rule, http://tinyurl.com/4jv7d3wm. CMS has repeatedly advised IRFs that administrative personnel can perform administrative tasks in preadmission screenings because "the focus of the preadmission screening review is on the quality of the information supplied, and on whether it supports the decision to admit the patient to the IRF, not on the processes including the personnel used to collect and compile the information." CMS, IRF Coverage Requirements Conference Call Transcript, p. 8 (Nov. 12, 2009), http://tinyurl.com/3j78vu3r. Indeed, CMS anticipates that rehabilitation physicians will be the ultimate arbiters of IRF patient admission decision and instructs that "[s]ince the preadmission screening information informs the rehabilitation physician's admission decision, we require that he or she document his or her review and concurrence with the findings and results of the preadmission screening **after** the screening is completed and prior to the IRF admission." *Id.* at 9 (emphasis added). Relator's allegation that nonclinical personnel were involved in the preadmission screening process is facially benign; it is not prohibited. Rather, CMS explicitly permits such involvement. "[W]hen a plaintiff's allegations do not exclude alternative explanations because they are stuck in 'neutral territory' they do not meet the plausibility standard required by *Iqbal* and *Twombly*." *Cavlovic v. J.C. Penney Corp.,* No. 2:17-CV-2042, 2018 U.S. Dist. LEXIS 95565, at *11 (D. Kan. June 7, 2018); s*ee also Integra,* 816 F. App'x at 897 (same).

- 12 -

Moreover, Relator's allegations are inconsequential to the appropriateness of an IRF patient's admission, or whether claims for IRF services are ultimately reimbursable. Medicare provides specific guidelines with respect to assessing the "medical necessity" of IRF services. *See* Medicare Benefit Policy Manual, Ch. 1, § 110.2, https://tinyurl.com/yrw5vu8b. Relator pleads only conclusory allegations that certain patients were improperly admitted, without addressing any of the elements that go into evaluating a patient's medical need for IRF services, nor how they implicate Medicare's reimbursement. SAC ¶ 27. Instead, she complains that, in her nonclinical opinion, the patients did not appear to have medical necessity for IRF services. She does not purport to have observed and/or participated in any patient's care, or to have any knowledge of the medical services rendered (or not rendered), or what services would have been medically reasonable and necessary for any given patient. To the contrary, the SAC emphasizes that she had a nonclinical role as a sales representative whose involvement was limited to "prescreens" prior to a rehabilitation physician making an admission determination—*i.e.,* before the patient was admitted to the IRF, had an established plan of care, or received any services. While Relator may deem herself unqualified to collect and scribe information for the review of a physician, her lack of clinical expertise is inconsequential to whether services performed at Encompass, as ordered by a rehabilitation physician, are medically necessary.

**b)** **The SAC Contains Nothing Beyond Conclusions**

Relator's allegations rely entirely on unreasonable[3] and impermissible conclusions about patient admissions processes and their impact on non-pleaded medical services and billing and coding activities. Her "frustratingly unspecific" pleading "asks too much of the court." *United States ex rel. Rostholder v. Omnicare, Inc.*, No. 1:07-CV-1283, 2012 U.S. Dist. LEXIS 114278, at *50-51 (D. Md. Aug. 14, 2012), *aff'd*, 745 F.3d 694 (4ᵗʰ Cir. 2014). She does not even plead a cognizable "theory of fraudulent conduct." *Id.* at *51. The SAC fails under Rule 8(a) for that reason.

**2.** **The SAC Lacks the Particularity Required by Rule 9(b)**

In addition to failing to plead a plausible fraud scheme or resulting "false" claim, Relator also fails to plead any operative facts of the alleged fraud in action. Because Relator does not "allege the details of an actually submitted false claim," the SAC must describe with particularity "both an alleged scheme to submit false claims," as well as "details leading to a strong inference that those claims were submitted." *Grubbs,* 565 F.3d 190-91. It does neither; it does not even plead claim submission. To survive dismissal, the core facts of Relator's fraud claims would need to be impermissibly inferred.

Rather than facts about "the particular workings of a scheme," Relator sloppily alleges "a vague scheme" with "no indication of why or how" it would produce false claims, which is insufficient under Rule 9(b). *Grubbs*, 565 F.3d at 186 n.19, 191; *see also*

---

[3] For instance, she pleads Encompass's "modules" show "certifying physicians" would "perform" required "prescreen[s]" in "very short times," despite "reminde[rs]" from Encompass's "CEO" to "spread out" the prescreens' timing. SAC ¶¶ 23-24.

*United States ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) ("sweeping and conclusory" allegations "without a shred of detail or particularity" fail under Rule 9(b)). For example, even if Encompass admitted patients that were not suitable to receive IRF services, Relator fails to plead details describing fraud or the submission of "false" claims. Instead, she asks the Court to presume that "improper" admissions are automatically fraudulent without pleading the very facts that would make Encompass's conduct fraudulent. The SAC's conclusory allegations require the Court to ignore the practical realities that, even taking Relator's allegations as true, patients' conditions change and admission errors do not equate to fraud. Indeed, Medicare contemplates an assessment period for the further evaluation of IRF patients' medical needs following admission, during which IRF services may be rendered and are reimbursable even if a patient is unable to complete the expected IRF stay. 42 C.F.R. § 412.624(f).

Fatally, the SAC lacks well-pleaded facts describing the "who, what, when, where, and how" of the alleged fraudulent scheme. *Thompson*, 125 F.3d at 903. Relator does not specifically identify ***what*** fraudulent conduct occurred, ***who*** engaged in the fraud, ***when*** it took place, ***where*** within Encompass's organization it took place, or ***how*** it was committed in a manner that could give rise to "false" claims. Even the SAC's thinly-pleaded examples do not offer particularized details of a fraudulent scheme. They fail to provide "first-hand experience of the scheme unfolding" with details of specific ***fraudulent*** acts, "specific dates" of ***false claims***, or the nature of any ***fraudulent*** "medical service or its Current

Procedural Terminology code that would have been used in the bill." *Grubbs*, 565 F.3d at 191-92.

First, Relator concludes a "psych" patient admitted by a physician had "no medical necessity and no ability to benefit from treatment." SAC ¶ 27. The SAC does not describe why the patient was ineligible to receive IRF services, does not identify any fraudulent services rendered, does not identify any providers that rendered the services, does not identify any "false" claims submitted in connection with such services, or any other details of the purported fraud. *Id.* Second, Relator contends patient "J.V." was admitted based on Relator's involvement and "caused the Government/Medicare to pay*." Id*. at ¶ 28. In addition to the foregoing deficiencies, she also does not describe her involvement and notably fails to allege she fraudulently facilitated the admission of "J.V." or otherwise supplied false information to facilitate the admission. Finally, Relator alleges "Medicare was billed" for a patient "based on the narrative" of an unnamed sales representative and at another facility Relator did not work at. *Id*. at ¶ 29. Again, Relator presents no factual details even suggesting the patient received reimbursable services or that "false" claims were submitted to Medicare.[4]

Relator's allegations about her "training" likewise fail to provide facts sufficient to show Encompass submitted false claims. She claims "Novia Mearidy," Encompass's "Business Development Director," provided "medical scripts" and information on medical

---

[4] Relator also never pleads Encompass failed to comply with the "60 percent rule," much less by virtue of nonclinical personnel's involvement in the admissions process. SAC ¶¶ 10-11.

"disciplines," "complaints," and "conditions" to "generate a basis for admission" and "higher reimbursements." SAC ¶ 19. First, she fails to explain how providing "scripts" or other guidance to nonclinical information collectors would be impermissible. But further, the Fifth Circuit has already rejected similar allegations. In *Integra*, the whistleblower similarly alleged defendant "trained" and "pressured" its "physicians" and "employees" to use "key words" when documenting and coding diagnoses and treatment decisions to trigger "higher-value" Medicare reimbursements for "medically unnecessary" services. *Integra*, 816 F. App'x at 895. The Fifth Circuit affirmed dismissal, finding the whistleblower's "examples simply give some identifying patient information and pair it with a diagnosis" without "any indication about what makes it a false claim." *Id.* at 898 ("The claims of falsity are simply conclusory."). Moreover, the Fifth Circuit found that "conclusory allegations" of "fraudulent directives, trainings, and guidance" from superiors fail under Rule 9(b). *Id.* at 899. Relator's allegations ought to meet the same fate.

Nothing in the SAC suggests Encompass admitted any patients under fraudulent pretenses as part of a scheme to defraud Medicare, or that their admissions resulted in "false" claims. Relator simply asserts nonclinical staff's involvement in their admissions. Far from particular, the SAC's "sole specific[s]" are merely "example[s]" that "do[] not allege, nor reliably indicate," the claimed misconduct is "real rather than hypothetical." *Nunnally*, 519 F. App'x at 894 (Rule 9(b) requires whistleblowers to plead "other reliable indications of fraud"). Again, Rule 9(b) compels dismissal.

### B.    Relator Fails to Allege Materiality

Separate and independently, Relator must explain why the alleged (but not-pleaded) false claims were "material" to the government's payment decision. *United States ex rel. Dresser v. Qualium Corp.*, No. 5:12-CV-01745, 2016 U.S. Dist. LEXIS 93248, at *20 (N.D. Cal. July 18, 2016) (dismissal for failure to sufficiently allege materiality). This is because "falsity and materiality are distinct requirements" under the FCA. *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 98 n.8 (3d Cir. 2018) (citing *Escobar*, 579 U.S. at 192). Indeed, the materiality requirement follows from both the statute itself, *see* 31 U.S.C. § 3729(b)(4), and Supreme Court precedent explaining that the FCA "was not designed to reach every kind of fraud practiced on the Government." *United States v. McNinch*, 356 U.S. 595, 599 (1958). Consequently, "[l]iability under each of the provisions of the [FCA] is subject to the further, judicially-imposed, requirement that the false statement or claim be material." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999). Here, the SAC fails to allege materiality entirely.

Where a pleading wholly fails to raise any specific allegations regarding the materiality of the alleged fraud, like Relator's SAC, dismissal with prejudice is warranted. *See United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 242 (5th Cir. Apr. 15, 2020) (affirming dismissal with prejudice where whistleblower offered "no specific allegations" of the alleged fraud's "materiality").

### C.    Dismissal Should Be with Prejudice

Though plaintiffs often receive every benefit of the doubt to plead in compliance with the federal pleading standards, "district courts are not required to give plaintiffs one

without prejudice ruling on the merits before dismissing with prejudice." *Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 196 (4th Cir. 2022) (granting first motion to dismiss FCA pleading with prejudice); *Integra*, 816 F. App'x at 897 (same). Here, the pleading is glaringly deficient. One can only infer if Relator had something else to offer, she would have done so. The SAC's defects are incurable ***because there are no underlying facts supporting Relator's fraud claims***. This Court ought to exercise its inherent power to use with prejudice dismissals and put a final stop to this action.

## V. CONCLUSION

The SAC must be dismissed with prejudice.

Dated: April 25, 2024

Respectfully submitted,

*/s/ R. Jeffrey Layne*
R. Jeffrey Layne
Texas Bar No. 00791083
jlayne@reedsmith.com
**REED SMITH LLP**
401 Congress Avenue, Suite 1800
Austin, TX 78701
Tel: (512) 623-1801
Fax: (512) 623-1802

*Attorney for Defendant Encompass Health Rehabilitation Hospital of Pearland, LLC*

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing contains 4,999 words, excluding the parts of the document that are exempted. This certificate was prepared in reliance on the word-count function of the word processing system (Microsoft Word) used to prepare the document.

*/s/ R. Jeffrey Layne*
R. Jeffrey Layne

## CERTIFICATE OF CONFERENCE

Pursuant to Section 17(b) of this Court's procedures, the undersigned hereby certifies that on April 25, 2024, Defendant's counsel conferred in good faith by teleconference with Relator's counsel, in an effort to resolve this dispute without Court action. The parties were unable to resolve the dispute. Relator opposes the relief sought by Defendant herein.

*/s/ R. Jeffrey Layne*
R. Jeffrey Layne

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 25, 2024, a true and correct copy of the foregoing document was filed with the Clerk of Court via the CM/ECF system, causing it to be served electronically on all counsel of record.

*/s/ R. Jeffrey Layne*
R. Jeffrey Layne